MAGUIRE (TRASK v.). See Case No. 14,-145.

MAGUIRE (UNITED STATES v.). See Case No. 15,708.

MAHER, v. The ACORN. See Case No. 10,-252.

MAHER (GREENLEAF v.). See Cases Nos. 5,779 and 5,780.

---

## Case No. 8,966.

### MAHN v. HARWOOD et al.

[3 Ban. & A. 515;[1] 14 O. G. 859; Merw. Pat. Inv. 462.]

Circuit Court, D. Massachusetts. Oct. 9, 1878.[2]

PATENTS—BASE-BALL COVERING—PATENTABLE INVENTION.

Where a patentee claimed: "The covering of a base-ball consisting of an outer and an inner covering, each of which is composed of two pieces of leather, and applied to the ball independently of each other, substantially as and for the purpose specified:" *Held*, that although the patentee was the first to combine the double leather cover (which was well known on certain kinds of balls), and apply it to a ball of a harder kind equally well known, but which before had been used with a single leather cover or with none, the change would not constitute a patentable invention.[2]

[Cited in Alcott v. Young, Case No. 149.]

[This was a suit by Louis H. Mahn against Harrison Harwood and others to restrain the infringement of a certain patent.]

Joseph C. Fraley and P. J. Flatley, for complainant.

J. E. Maynadier, for defendants.

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

LOWELL, District Judge. This suit is brought for the infringement of James H. Osgood's patent, issued May 21st, 1872, No. 127,098, as reissued April 11th, 1876, reissue No. 7,046. The description is substantially similar in both patents, but the general statement of the invention in the opening, and the claims at the close are different. The invention relates to the coverings for base-balls and other similar articles, but the claims make no mention of other articles beside base-balls. The patentee describes coverings of leather cut in a hemispherical shape, and

1 [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

2 [Affirmed in 112 U. S. 354, 5 Sup. Ct. 174, and 6 Sup. Ct. 451.]

how they are to be fitted and sewed, with a peculiar stitch, which is the subject of claims not now in controversy. After one leather cover has been put on, and has become dry, another similar cover is fitted and sewed in like manner above the first. The third claim, which is alleged to be infringed, is: "The covering of a base-ball consisting of an outer and an inner covering, each of which is composed of two pieces of leather, and applied to the ball independently of each other, substantially as and for the purpose specified."

By reference to the specification, the purpose of the second cover is to enable the ball to bear severe usage better than it could with a single cover. The defendant makes a ball with leather covers, each of which is composed of two pieces, and is, therefore, within the third claim, unless that claim shall be confined to the hemispherical form described in the patent. His ball has a certain amount of yarn wound round the inner cover or binder before the outer cover is put on.

In a suit by this complainant against another defendant in the third circuit, this form of ball was held to infringe the patent, and we see no reason to dissent from that decision. Our information concerning the decision above mentioned is derived from certain admissions and other oral testimony contained in this record, with copies of some of the depositions used in that case, from which it would appear that the novelty of the invention was decided on a very different state of facts from that which is before us.

It is proved in this record, and admitted in argument, that long before 1872, balls made of twine, wound on a core, with a single cover of leather, were old and well known; and that balls made in other modes, such as by winding yarn or twine round a bunch or bundle of scraps of cloth, or other similar substance, or by winding yarn loosely round a core of lead or a small bag of shot, were covered with two covers of leather in substantially the mode of the patent. It is admitted in this case, though it was not in the case in Pennsylvania, that this double cover was used by the defendant years before the date of the patent, and that this use was known to the patentee.

In this state of facts the plaintiff cannot hold a patent for a double covering for balls generally; and he contends that the term "base-balls," in his third claim, means only the balls used by a certain association of persons who regulate the games of the clubs, which are made of yarn, wound on a small core of cork or India-rubber to a certain size and of a given weight. These are much harder, and will bear, and are required to bear, much more severe usage than the balls used some years ago. The regulations were substantially what they now are, when the patent was issued. On the other hand, the defendant contends that the claim cannot be thus contracted, and that if it were, it is still void for want of novelty.

It is quite within the decisions, to construe a word in the patent, such as "base-ball," in a way to save the patent, if that is one of its meanings, though not the only or even the most common one; provided that, by such a construction, the patentee will receive exactly what he has invented, and every one else can use all that is old. We are, therefore, disposed to say that the third claim may be limited, and that upon this record it may be held that the patentee was the first to combine the double leather cover (which was well known on balls made of "gimpings," with yarn wound round them, and on other forms of ball), to a ball of a harder kind, equally well known, but which before had been used with single leather cover or with none.

But we are of opinion that such a combination is not patentable. It is not claimed in the patent, and does not appear to be true, that any new or different effect is sought or obtained, unless, perhaps, in degree, by the double cover as applied to the one ball rather than the other. A changed mode of playing the game required a harder ball, and one of well-known form was adopted, and to it was added the second cover, which was also well known, and often used in the softer balls. This is a change of form which appears, in view of the state of the art, to be within the line of ordinary mechanical adaptation, and nothing more. Bill dismissed.

[On appeal to the supreme court the decree of the circuit court was affirmed. 112 U. S. 354, 5 Sup. Ct. 174, and 6 Sup. Ct. 451.]